**Robert ALTOMARE, Plaintiff**

v.

**Joanne BARNHART, Commissioner of Social Security, Defendant**

No. CIV.A.04–2763.

United States District Court, E.D. Pennsylvania.

Sept. 22, 2005.

Michael Patrick Boyle, Philadelphia, PA, for Plaintiff.

Eda Giusti, Social Security Administration, Philadelphia, PA, for Defendant.

## MEMORANDUM OPINION AND ORDER

RUFE, District Judge.

Robert Altomare brings this action under 42 U.S.C. § 405(g) and § 1383(c), seeking reversal of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance benefits ("DIB") under Title II of the Social Security Act and supplemental security income ("SSI") under Title XVI of the Social Security Act. Plaintiff and Defendant filed cross motions for summary judgment. United States Magistrate Judge Linda K. Caracappa issued a Report and Recommendation ("R & R") recommending that this Court deny Plaintiff's motion, grant Defendant's motion, and affirm the Commissioner's decision. Plaintiff did not file objections to the R & R.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on May 28, 1959. He has a tenth-grade education, and no general equivalency degree. He worked for ap-

proximately fifteen years in building maintenance and repair. Plaintiff alleges that he had been disabled since December 23, 1996 when he injured his right knee and back by slipping on ice while working. He filed his application for DIB[1] and SSI benefits on December 5, 2002, and his claim was denied by the Social Security Administration. Plaintiff appealed, and an administrative hearing was held on December 2, 2003 before Administrative Law Judge ("ALJ")William J. Reddy. The ALJ issued an unfavorable decision on December 24, 2003, finding that Plaintiff had the residual functional capacity to perform a limited range of light work. Plaintiff sought review by the Appeals Council, which denied his request on April 30, 2004. Plaintiff then filed an appeal in this Court.

Plaintiff alleges multiple medical problems, including chronic back injury, right knee injury, obesity,[2] affective disorder, and anxiety disorders. At the administrative hearing, Plaintiff presented medical evidence, including objective studies of his back, doctor's notes, mental health evaluations, reports issued by independent examiners for the Bureau of Disability Determination, and mental and physical residual functional capacity forms submitted by Plaintiff's treating psychologist and physician. Plaintiff also testified as to his level of pain and his functional limitations. This medical evidence is discussed in greater detail in the discussion that follows.

This case ultimately rests upon Plaintiff's residual functional capacities. The ALJ applied the five-step sequential evaluation to his disability claim, and reached the fifth step of the analysis.[3] Therefore, the critical question for the ALJ was whether the Commissioner proved that Plaintiff has the residual functional capacity to perform some job that exists in the national economy.

To aid the ALJ in this determination, vocational expert Gary Boyle (the "VE") testified at the ALJ hearing. The ALJ asked the VE to consider an individual with Plaintiff's vocational profile who could lift twenty pounds occasionally and ten pounds frequently, who could stand and walk for two hours a day, sit for six hours a day, and occasionally climb and bend. The VE testified that such an individual could work a limited range of light exertion jobs, including bench assembler and inspector, even if that individual was also limited by needing a sit/stand option and could only perform simple one- or two-step tasks. The VE also testified that Plaintiff could not perform any work in the national economy if: 1) the ALJ finds that Plaintiff needs a cane to stand and he needs a sit/stand option to work, because he could not perform any light or sedentary jobs while standing with a cane; 2) the ALJ credits treating physician Dr. Mitchell Horen-

---

1. Plaintiff's date last insured, for DIB purposes, is December 31, 2001, so he must prove that he was disabled by that date to be entitled to DIB. 42 U.S.C. § 423(a)(1)(A).

2. Plaintiff's body mass index is between 33 and 36, which is in the obese range.

3. The five steps are as follows: 1) the claimant must establish that he is not currently engaging in substantial gainful activity; 2) the claimant must establish that he suffers from a severe impairment; 3) if the claimant demonstrates that his disability meets or equals an impairment listed in 20 CFR Pt. 404, Subpt. P, App. 1, he is considered *per se* disabled and entitled to DIB, and the evaluation process ends there; 4) if the claimant does not satisfy step three, then he must establish that he does not have sufficient residual functional capacity to perform his past relevant work; and 5) if he does so, the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other work which exists in substantial numbers in the national economy. *Burns v. Barnhart,* 312 F.3d 113, 119 (3d Cir.2002).

stein's residual functional capacity questionnaire; 3) the ALJ credits treating psychologist Dr. Michael P. Gray's residual functional capacity questionnaire, which indicates that Plaintiff currently lacks prevocational skills; or 4) the ALJ credits Plaintiff's complaints about poor memory and sleepiness.[4] The ALJ ignored Plaintiff's documented cane use, did not credit the residual functional capacity questionnaires completed by Dr. Horenstein and Dr. Gray, and did not credit Plaintiff's subjective complaints of poor memory and fatigue. The ALJ therefore concluded that Plaintiff was capable of performing a limited range of light work.

### STANDARD OF REVIEW

■ The Social Security Act provides for judicial review of any "final decision of the Commissioner of Social Security" in a disability proceeding.[5] The Court may enter a judgment "affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[6] However, the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive."[7] Accordingly, the Court's scope of review is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact."[8]

■ Substantial evidence has been defined as "more than a mere scintilla" but somewhat less than a preponderance of the evidence, or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] The standard is "deferential and includes deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence."[10]

### DISCUSSION

### A. Plaintiff's Use of a Cane to Stand and Walk

■ The ALJ did not address Plaintiff's reliance on a cane in his decision, although his decision noted that Dr. Lieberman prescribed a cane for Plaintiff,[11] and further noted that Dr. Horenstein indicated that Plaintiff had a gait dysfunction requiring cane use.[12] The VE testified that Plaintiff's use of a cane for balance and walking reduces possible employment to sedentary jobs. Furthermore, the VE testified, as Plaintiff needs a sit/stand option to work, and he could not work while standing with the aid of a cane, Plaintiff would be unable to work for a significant portion of the day. Therefore, the VE testified that Plaintiff's need for a cane to stand and walk would render him unable to work. The ALJ failed to set forth his reasons for rejecting the VE's opinion, despite Plaintiff's documented reliance on a cane. The Court thus remands the case for reconsideration of the effect of Plaintiff's cane use on his residual functional capacity to work.

---

4. R. at 48–51.

5. 42 U.S.C. § 405(g).

6. *Id.*

7. *Id.*

8. *Schwartz v. Halter*, 134 F.Supp.2d 640, 647 (E.D.Pa.2001).

9. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Jesurum v. Sec'y of the United States Dept. of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995).

10. *Schaudeck v. Comm'r of S.S.A.*, 181 F.3d 429, 431 (3d Cir.1999).

11. R. at 15.

12. R. at 15.

## B. *Rejection of the Treating Medical Doctor's Opinion*

 "Treating physicians' reports should be accorded great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." [13] A treating physician's reports should be given *controlling* weight when it is well-supported and consistent with other evidence on the record. [14]

 Dr. Horenstein, who has been Plaintiff's treating doctor since at least 2001, diagnosed Plaintiff with chronic back pain, myositis, and myalgia. Dr. Horenstein noted that Plaintiff suffered from the following functional limitations: fatigue; consistent daily back pain with limitations in movement and which interfered with attention and concentration; limitations on ability to walk; inability to sit more than five minutes out of every thirty; and inability to sit or stand/walk more than two hours each during an eight hour work day. [15] Plaintiff would need to take frequent, unscheduled breaks during the day, to elevate his legs when sitting for prolonged periods, and to use a cane. Dr. Horenstein predicted four or more absences from work a month due to pain. [16] He noted that Plaintiff could carry less than ten pounds occasionally, never twist or climb ladders, rarely stoop, bend or squat, and occasionally climb stairs. [17]

The Record contains objective test results from 1997 and 1998, which reveal L5 radiculopathy on the right, multiple Schmorl's nodes, developmental narrowing of the spinal canal at L2–3 and L3–4, questionable facet hypertrophy at L3–4 and the left side of L4–5, and S1 right side nerve root involvement. Plaintiff underwent a series of lumbar epidural corticosteroid injections for the lumbar radiculopathy in 1997 and 1998. [18] These findings are supportive of Dr. Horenstein's reports.

Furthermore, a consultative examiner for the Bureau of Disability Determination, Dr. Andrea Pedano, examined Plaintiff and found muscle spasm of the paravertebral muscles of the thoracic spine, a subpatellar cyst in Plaintiff's knee, limitations in range of motion in the knees, hips, feet, and lumbar region. She noted the following critical functional limitations: ability to stand or walk only an hour or less during an eight hour workday and to sit for one to two hours in an eight hour work day. [19] She also noted that Plaintiff uses a cane for walking and weight bearing. [20]

Despite the essential agreement of the two examining doctors, the ALJ did not credit Dr. Horenstein's answers to the residual functional capacity questionnaire. [21] The ALJ found that objective testing did not support the degree of severity asserted by Dr. Horenstein or Dr. Padian, but the ALJ did not provide a detailed rationale for this finding. Although the ALJ pointed out that there is no evidence of disc herniation in the 1997 and 1998 testing, he did not explain why the problems that *were* found would not account for Plaintiff's symptoms. Furthermore, the ALJ

---

13. *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999).

14. 10 C.F.R. § 416.927.

15. R. at 15–16.

16. R. at 16.

17. R. at 16.

18. R. at 203–08.

19. R. at 16.

20. R. at 142–43.

21. R. at 15.

refused to hold the record open so that he could review the results of additional testing, conducted one day after the hearing.[22] The other reason the ALJ provided for rejecting the treating doctor's opinion is inconsistency in Plaintiff's self-reports of leg numbness, which symptom is largely irrelevant to the functional limitations set forth by Dr. Horenstein.

Instead, the ALJ partially credited the opinion of a non-examining Disability Determination Service ("DDS") physician, who reviewed Plaintiff's records and emphasized that his failure to resort to narcotic pain killers [23] indicated that his symptoms were not as severe as alleged, and opined that Plaintiff could engage in sedentary work. This opinion disregards notes in Plaintiff's medical files indicating that Plaintiff is allergic to several types of narcotic pain medication.[24] Furthermore, the Court finds that a medical opinion that relies so heavily on Plaintiff's course of treatment, and not on objective medical findings, is insufficient to outweigh the presumption in favor of the treating doctor's opinion. Additionally, the ALJ gives no reason for rejecting the reviewing doctor's opinion that Plaintiff is limited to sedentary exertion work. The ALJ ultimately found that Plaintiff was capable of a limited range of light exertion work.

Given that the VE testified that Plaintiff would be unable to work in any profession if his treating doctor's opinion was credited, and finding that the ALJ's rejection of

this opinion was not supported by substantial evidence, the Court remands this case for reconsideration of the treating doctor's opinion, in light of the concurring opinion of Dr. Padian. The ALJ should also consider what effect, if any, Plaintiff's obesity has on Plaintiff's residual functional capacity.[25]

### C. Rejection of the Treating Psychologist's Opinion

█ Treating psychologist Michael P. Gray, Ph.D. completed a residual functional capacity form,[26] noting that Plaintiff has moderate limitations in his ability to: 1) maintain concentration and attention for extended periods of two-hour segments; 2) work with or near others without being unduly distracted by them; 3) accept instruction and respond appropriately to criticism; 4) complete a workday or work week without interruption from psychological symptoms; 5) work at a consistent pace without an unreasonable number and length of rest periods; 6) work with or near others without unduly distracting them or exhibiting behavioral extremes; and 7) respond appropriately to changes in a routine work setting. Non-examining DDS reviewer James Cunningham, EdD. found, based on his review of Plaintiff's records, moderate limitations in Plaintiff's ability to: 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) respond appropriately to changes in the

22. The ALJ stated that he would consider any additional testing results if they were received before his opinion was issued, but the Plaintiff was unable to submit them in time since the opinion was issued only three weeks after the hearing.

23. Plaintiff is prescribed Neurontin, which is a non-narcotic medication often prescribed for pain relief.

24. R. at 141; Dr. Pedano summarized medical records, noting allergy to OxyContin and Percocet.

25. The ALJ found that Plaintiff's obesity did not meet a listing, but failed to consider the extent to which it may have impacted on the functional limitations noted by the examining doctors.

26. R. at 226–28.

work setting; and 5) set realistic goals and make plans independent of others.[27] However, unlike Plaintiff's treating psychologist, Dr. Cunningham found Plaintiff's social skills to be relatively intact. However, he did note that Plaintiff was diagnosed with bipolar disorder and was being treated with four psychoactive medications.

Again, the ALJ gave greater weight to the opinion of the reviewing doctor, without adequate explanation for rejecting the opinion of the treating doctor. While the ALJ noted that he did not find significant evidence of violence, homicidal ideation or hostility in the Record, this is not sufficient to reject the opinions of the treating psychologist set forth in the residual functional capacity questionnaire, as none of those limitations concern Plaintiff's propensity for violence in the workplace. Furthermore, 2002 intake and psychiatric evaluations of Plaintiff note depression since childhood, with a preliminary diagnosis of major depression and a psychiatric diagnosis of and medication for bipolar disorder, problems with socialization, energy, and concentration, and anxiety disorders.[28] All of these findings are consistent with the functional limitations noted by Dr. Gray.[29] Therefore, the Court finds that the ALJ's rejection of the treating doctor's opinion concerning Plaintiff's functional limitations was not supported by substantial evidence.

The VE testified that a person with the limitations Dr. Gray described would not have the "pre-vocational skills" necessary to work at any job. The VE was not asked about, and did not testify about, whether an individual with the limitations Dr. Cunningham described would be able to work. The ALJ's hypothetical included the limitation of ability to perform only simple one- or two-step tasks, but it did not include the other three non-exertional limitations Dr. Cunningham found. Additionally, the ALJ failed to consider any side effects of Plaintiff's psychiatric medications, including fatigue. Therefore, the ALJ must, on remand, reconsider all of Plaintiff's non-exertional functional limitations in light of the evidence regarding Plaintiff's mental illness.

### D. Failure to Consider New Objective Studies of the Spine

Plaintiff underwent nerve conduction studies on December 3, 2003, one day after his ALJ hearing. Dr. Albert Tahmoush concluded that it was an abnormal study, showing a chronic right L5 radiculopathy.[30] This abnormality had been in evidence since 1997. Plaintiff also had an additional MRI of the lumbar spine on December 5, 2003. Dr. Michael Mazza found: 1) loss of disc height at T12 through L4 with associated Schmorl's nodes at every level; 2) at level L3–4, Plaintiff had a herniated nucleus pulposus extending posterolaterally to the left, minimal to moderate stenosis, facet joint hypertrophy; 3) at level L4–5, herniated nucleus pulposus, moderate stenosis, hypertrophic facet joints and ligamentum fluvum.[31]

Plaintiff argues that the Commissioner erred in failing to consider this evidence. At the ALJ hearing, Plaintiff had asked the ALJ to hold the Record open to con-

---

27. R. at 157–59.

28. R. at 134–35, 211–15.

29. While Dr. Gray is the treating psychologist, the intake and psychiatric evaluations were performed by other mental health professionals.

30. R. at 237.

31. R. at 234.

sider these records when they became available. The ALJ declined to do so.[32]

 The Court finds that a "sentence six remand" is appropriate under the circumstances of this case. The Social Security Act provides that the Court may remand for further proceedings where new and material evidence exists, but only upon a showing of "good cause" for not presenting this evidence to the ALJ.[33] To warrant a new evidence remand, the Plaintiff must show: 1) that the evidence is "new" and not merely cumulative; 2) the evidence is material and there is a reasonable probability that the new evidence would have changed the outcome of the Commissioner's determination; 3) the evidence does not concern a later-acquired disability or subsequent deterioration of the previously non-disabling condition; and 4) there is "good cause" for not including the new evidence in the administrative record.[34]

Plaintiff has shown good cause under the above requirements. First, the 2003 studies are new objective evidence of Plaintiff's condition, and are not merely cumulative. Second, as the ALJ's decision was based in part on a lack of objective evidence to support the treating doctor's estimation of Plaintiff's functional limitations, the additional objective studies are material. Furthermore, given that the ALJ specifically pointed out the lack of evidence for disc herniation, there is a reasonable probability that the findings of disc herniation may have changed the outcome of this case. Third, many of the findings in the 2003 studies were also evident in Plaintiff's 1997 and 1998 studies, and are not evidence of a later-acquired disability. While the results do indicate some deterioration in Plaintiff's condition, the Court is not convinced that Plaintiff's

condition was non-disabling at the time of the hearing. Finally, the Court finds that, upon Plaintiff's request, the Record should have been kept open to receive the results of the studies that were conducted within days of the hearing. Therefore, the Court finds the ALJ's refusal to do so establishes "good cause" for Plaintiff's failure to make these test results part of the administrative record. Given the above factors, the Court finds it appropriate to grant a sentence six remand, and remands the case for a full and fair consideration of the additional spinal studies conducted in December 2003.

An appropriate Order follows.

### ORDER

AND NOW, this 22nd day of September, 2005, upon review of the administrative record, Plaintiff's Motion for Summary Judgment or for Remand [Doc. # 7], Defendant's Motion for Summary Judgment [Doc. # 10], and the Magistrate Judge Linda K. Caracappa's R & R [Doc. # 14], and for the reasons set forth in the attached Memorandum Opinion, the Court hereby **ORDERS**:

1. The R & R is not approved;
2. Defendant's Motion for Summary Judgment is **DENIED**;
3. Plaintiff's Motion for Summary Judgment is **DENIED**;
4. Plaintiff's Motion for Remand is **GRANTED**; the case is remanded to the Commissioner for further action in accordance with the attached Memorandum Opinion. Specifically, the case is remanded so that the Commissioner may:
 A) Re-evaluate the effect of Plaintiff's dependence on a cane on his ability to work;

**32.** R. at 51–52.

**33.** 42 U.S.C. § 405(g); *Matthews v. Apfel,* 239 F.3d 589 (3d Cir.2001).

**34.** *Szubak v. Sec'y of Health and Human Servs.,* 745 F.2d 831 (3d Cir.1984).

B) Consider new objective evidence of Plaintiff's back injury, specifically the studies conducted in December 2003;

C) Re-evaluate the medical evidence in its entirety, including a review of the December 2003 medical evidence noted above, giving appropriate weight to the opinion of Plaintiff's treating physician, or adequately supporting the rejection of this opinion. Upon review, the Commissioner must also consider the effect, if any, of obesity on Plaintiff's residual functional capacity.

D) Re-evaluate the psychological evidence, giving appropriate weight to the opinion of the treating psychologist or adequately supporting the rejection of that opinion. The Commissioner must also consider the side effects, if any, of Plaintiff's psychoactive medications.

It is so **ORDERED**.